**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ALI WARIS, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | |
| HCR MANOR CARE *dba* | : | NO. 07-3344 |
| HEARTLAND HOME HEALTH CARE, | : | |
| | : | |
| Defendant. | : | |

<u>**MEMORANDUM RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**</u>

**Baylson, J.**                                                       **February 10, 2009**

Presently before this Court are parties' Cross-Motions for Summary Judgment in an action involving a failure to hire employment discrimination claim on the basis of age, race, and national origin.  For the following reasons, Plaintiff's motion will be DENIED and Defendant's motion will be GRANTED.

**I.**     <u>**Factual Background**</u>

**A.**     **Plaintiff's Application to Administrator Position**

Plaintiff was 60 years old at the time of the incident in question and is of Indian origin and Asian-Indian race.  (Am. Compl. ¶ 26.)  Defendant Heartland Home Health Care Services, Inc. (hereinafter "Heartland") sought applicants for its vacant Administrator position at its Plymouth Meeting, Pennsylvania office.  (Def.'s Statement Undisputed Fact ¶ 1.)  As its name implies, Defendant is in the business of supplying home health care services.  The Administrator is responsible for overall management of office, including, but not limited to, setting goals, objectives, and policies; identifying community health needs; developing and evaluating

programs to meet these needs; overseeing the branch budget; monitoring compliance with regulatory agencies and other certifying bodies; and keeping local staff informed of organization, community, and industry trends. (Pl.'s Mot. Summ. J. Ex. X.) Plaintiff applied to the position through an on-line application in March 2006 after seeing an ad for the position in the Philadelphia Inquirer. (Def.'s Statement Undisputed Fact ¶ 2.) Defendant asserts that the application did not ask about age, race, or national origin. (Id. at ¶ 4.)[1]

Plaintiff also emailed his resume to Defendant's Senior Recruiter Susan Obriot both in March and in May 2006. (Id. at ¶ 6.) Plaintiff's resume did not list his age, race, or national origin. (Pl.'s Mot. Summ. J. Ex. A.) However Plaintiff asserts his minimum age could be deduced from his resume based on when he completed his first Master's Degree. (Pl.'s Statement Undisputed Fact ¶ 12.) Plaintiff also spoke with Obriot on the phone two or three times in 2006 about the status of his application. (Def.'s Statement Undisputed Fact ¶ 12.) During these calls, Plaintiff was not asked, nor did he disclose, his age, race, or national origin. (Id. at ¶ 13.) However, Plaintiff asserts that Obriot could detect from these calls that his national origin was non-native U.S. because he speaks with an accent. (Pl.'s Statement Undisputed Fact ¶ 13.)

Defendant asserts that Obriot was responsible for pre-screening applicants for the position and making sure that they met the minimum qualifications. (Def.'s Statement Undisputed Fact ¶ 16.) Plaintiff does not admit or deny this fact, but disputes its credibility. (Pl.'s Rebuttal Def.'s

_____

[1]Plaintiff disputes this fact because he claims that the online application asked applicants to voluntarily provide their national origin, which he did. (Pl.'s Rebuttal Def.'s Statement Undisputed Fact ¶ 4.) However, the Court's independent review of the application does not reveal that it asked about national origin. (Def.'s Mot. Summ. J. Ex. 3.)

Statement Undisputed Fact ¶ 16. ("Plaintiff cannot admit or deny the assertion because both Obriot and [Regional Director Leslie] Mackey's affidavits lack credibility."))[2]  The stated minimum qualifications for the Administrator position included a nursing diploma or degree in business, health care, nursing, or a related field and a minimum three to five years experience in an administrative or supervisory capacity in a home health agency, hospice, or other related health program.  (Pl.'s Mot. Summ. J. Ex. X at 2.)  Other criteria included problem-solving and decision-making capabilities; ability in program administration; and ability to develop and maintain rapport with clients, family, and staff.  (Id.)  Defendant asserts that when a candidate met the minimum qualifications, Obriot would pass along the application to Regional Director of Operations Leslie Mackey, who had hiring authority for the Plymouth Meeting Administrator position.  (Def.'s Statement Undisputed Fact ¶¶ 16, 17.)  Again, Plaintiff can not admit or deny this fact but disputes its credibility.  (Pl.'s Rebuttal Def.'s Statement Undisputed Fact ¶¶ 16, 17.)

Obriot forwarded Plaintiff's resume to Mackey on March 28 and May 15, 2006, since he

---

[2]Plaintiff's assertion that Defendant's evidence lacks credibility is not supported by any factual allegations or affirmative evidence; therefore, the Court will not consider such unsubstantiated assertions as disputed factual issues. Although "courts do not weigh evidence or determine credibility questions at the summary judgment stage," Hill v. City of Scranton, 411 F.3d 118, 131 (3d Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)), "an opponent may not prevail merely by discrediting the credibility of the movant's evidence; it must produce some affirmative evidence," Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986))).  A party opposing summary judgment must do more than just "'rest upon mere allegations, general denials, or . . . vague statements.'"  Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  See also Russoli v. Salisbury Twp., 126 F.Supp.2d 821, 855 (E.D. Pa. 2000) ("In response to a motion for summary judgment on a retaliation claim, the plaintiff may not respond simply with general attacks upon the defendant's credibility.  The plaintiff must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden." (citing Crawford-El v. Britton, 523 U.S. 574, 600 (1998))).

met the minimum qualifications.  (Def.'s Statement Undisputed Fact ¶¶ 25, 32; Mot. Summ. J.

Exs. 4, 5.)  Specifically, Plaintiff has two Masters degrees, one in biomedical engineering and

science and one in zoology.  (See Def.'s Mot. Summ. J. Ex. 9, Waris Resume.)  As to his related

experience, Plaintiff worked as an Administrator at the Humble Health Center in Harris County,

Texas from June 2005 to August 2005; Plaintiff served as Executive Director of Capital Home

Healthcare in Wilmington, Delaware from 2000 to 2004; and Plaintiff was Executive Director of

American Health Systems, Inc., in Philadelphia, Pennsylvania from 1986 to 1993.  (Id.)  Plaintiff

has also served as a consultant to home health agencies and has written two books on healthcare.

(Id.)  During spring 2006, when he applied for the Heartland position, Plaintiff was employed as

adjunct faculty teaching human anatomy, physiology, and medical office management at Holy

Family University and Harcum College.  (Id.)

     **B.**     **Additional Consideration of Plaintiff Conducted by Defendant**

     Beginning in May of 2006, Mackey began the selection process for the Administrator

position.  (See id. Ex. 7.)  A total of thirty-two candidates applied to the Plymouth Meeting

position during 2006.[3]  (Def.'s Statement Undisputed Fact ¶ 35.)  In late May and early June,

Mackey asked Obriot to schedule interviews with four applicants, including Plaintiff.  (Def.'s

Mot. Summ. J. Ex. 22.)  However Mackey testified that Obriot expressed to her that based on

Obriot's prior phone calls with Plaintiff, Obriot was concerned that he lacked the requisite

---

     [3]Plaintiff disputes this fact because he notes that positions in two other offices,
Philadelphia and Chadds Ford, were also looking to fill positions.  (Pl.'s Rebuttal Def.'s
Statement Undisputed Fact ¶ 35.)  However, upon review of Plaintiff and Defendant's supporting
exhibits, this Court is persuaded that the Record shows, without dispute, that thirty-two
applicants specifically applied for the Plymouth Meeting position.  (Def.'s Mot. Summ. J. Exs.
16, 17-21; Pl.'s Mot. Summ. J. Ex. M.)

knowledge and experience for the position.  (Id. Ex. 8, Mackey Dep. at 156:19-157:4.)  In

particular, Obriot advised Mackey that Plaintiff's application raised the following issues:

- •     Unrelated experience
- •     Gaps in employment
- •     Plaintiff's conversation with Obriot in comparison to other candidates

(Def.'s Mot. Summ. J. Ex. 8, Mackey Dep. at 156:19-157:4.)[4]  Based on these issues (which

Defendant refers to as "red flags"), Mackey testified that she informed Obriot to conduct further

screening of Plaintiff.  (Def.'s Mot. Summ. J. Ex. 8, Mackey Dep. at 156-58.)

       On May 30, 2006, immediately after talking to Mackey, Obriot emailed Plaintiff a list of

seven substantive questions which required Plaintiff to articulate his experience and

qualifications for the position.  (Def.'s Statement Undisputed Fact ¶ 43.)  Plaintiff disputes this

fact but provides no Record support for his counter-factual statement that "immediately after

Obriot told Mackey that Plaintiff spoke with an accent, Mackey told Obriot to 'set him up' which

Obriot did by giving Plaintiff a bogus 'screening' test."  (Pl.'s Rebuttal Def.'s Statement

Undisputed Fact ¶ 43.)  Obriot explained to Plaintiff that she was sending the questionnaire to

him because a previous candidate for the job had "changed her mind on relocating," and she

asked Plaintiff to complete the questionnaire that day.  (Def.'s Mot. Summ. J. Ex. 10.)  The

questionnaire did not specify a required minimum or maximum length of answers.  (Pl.'s

Statement Undisputed Fact ¶ 9.)  However Defendant notes that the questionnaire contained

"substantive essay-style questions in a computer Word document in which Plaintiff had free

---

      [4]The Court notes that according to Plaintiff's own resume he lists no employment from
August 2005 until "Spring Semester 2006," when he was employed as adjunct faculty.  (Def.'s
Mot. Summ. J. Ex. 9.)  Plaintiff's resume also shows that although Plaintiff served as
administrator of a Texas health center from June to August 2005, that position lasted only two to
three months, and he lists no employment from January to May 2005.  (Id.)

reign to answer at any length he chose . . ." (Def.'s Counter-Statement Undisputed Fact ¶ 9.)

Plaintiff submitted his answers the next day, May 31. One of his answers consumed six lines and the remaining answers were two to three lines. (Def.'s Mot. Summ. J. Ex. 10.) Mackey testified she believed Plaintiff's responses were "very vague, one sentence, and didn't give a lot of information." (Def.'s Mot. Summ. J. Ex. 8, Mackey Dep. at 160:21-23.) Further, Mackey expressed her concerns about Plaintiff's answers as follows: "[F]rankly, an individual who took this didn't take a lot of time to answer in detail and concisely. And I was concerned that the person just didn't take the time needed to really want the job." (Id. at 160:23-161:3.) No other candidates were given the same written questionnaire. (Pl.'s Statement Undisputed Fact ¶ 8.)

### C.     Defendant's Rejection of Further Consideration of Plaintiff

After receiving his supplemental responses on May 31, Mackey decided not to interview Plaintiff. (Def.'s Statement Undisputed Fact ¶ 55.) Mackey swore in an affidavit that she had no knowledge of Plaintiff's age, race, or national origin in deciding to not interview him. (Def.'s Mot. Summ. J. Ex. 12 at ¶ 7.) Plaintiff's deposition of Mackey did not result in any change or challenge to her affidavits. (See Def.'s Mot. Summ. J. Exs. 5, 12, Mackey Affs.; Ex. 8, Mackey Dep.)

The record shows that Ms. Mackey did interview another applicant, Gregory Field ("Field"), that same day, May 31, 2006. (Def.'s Statement Undisputed Facts ¶ 53.) Sometime after Field was interviewed, Defendant offered Field the position, but he turned it down because the pay was insufficient. (Id. at ¶¶ 57-58; Def.'s Mot. Summ. J. Ex. 28.) Field was a Caucasian male. (See Pl.'s Mot. Summ. J. Ex. W, Mackey Dep. at 208:21-208:22.) Certain facts concerning Field's candidacy are discussed infra, Part IV.B.3.d.

-6-

After Defendant decided not to pursue Plaintiff's candidacy, the Record is not clear as to when Plaintiff was initially notified of his rejection for the position. An e-mail from Obriot suggests that Plaintiff was notified prior to the end of June. (Pl.'s Mot. Summ. J. Exs. I, J, Obriot & Waris Emails from June 28-29, 2006 (stating that Obriot had previously notified Plaintiff of his rejection from the position)). In contrast, Plaintiff argues that he did not hear from Heartland for a month following submission of his questionnaire. (Pl.'s Mot. Summ. J. ¶ 37.) In an email from Obriot to Plaintiff dated June 29, 2006, in response to an e-mail from Plaintiff about his candidacy for the Administrator position and as to why he was not selected for other positions with the company to which he had applied in the past one to two years,[5] Obriot stated that "they went with a candidate that had more experience" for the Administrator position. (Id. Ex. I.) In an e-mail dated July 5, 2006, responding to Plaintiff's email of July 2, 2006, Obriot informed Plaintiff that "I filled the position with local candidates who were already in the interviewing process prior to receiving your resume." (Id. Ex. Q.)

Plaintiff claims that during the course of this litigation Defendant's stated reasons for firing him have shifted. (Id. at 18.) In Defendant's Position Statement to the EEOC, the Manager of Human Resources explained that Plaintiff gave vague responses and a lack of detail in the pre-interview questionnaire, cited to one of Plaintiff's questionnaire answers, and stated

---

[5]Beyond Plaintiff's allegation that in 2005-06 he applied to "various advertised Home Care Administrator positions at different branch offices of the Defendant without any acknowledgment from the Defendant" (Am. Compl. ¶16), the Record does not contain any evidence regarding these other applications. As such, the Court will only consider the Administrator position at issue in this claim.

that this demonstrated "he was not the best candidate for the position."[6]  (Id. Ex. E at 3.)  Mackey

stated in her September 12, 2006 Affidavit that she chose not to pursue Mr. Waris "due to his

vague, one-sentence responses on the screening he had completed."  (Id. Ex. N.)  In her

deposition, Mackey testified that all seven questions were not answered up to her expectations:

| Plaintiff: | So you are saying that all seven questions were not answered up to your expectations; is that what it is? |
| Mackey: | Correct. |

(Id. Ex. W at 162.)  The Court will consider below whether these responses are evidence of

pretext.

### D.    Defendant's Eventual Hire

In total, Defendant interviewed seven applicants for the position.  (Pl.'s Statement

Undisputed Fact ¶ 4.)  All interviewees were Caucasian.  (Id. at 5.)  However the Record does not

establish that all interviewees were native born.  In October 2006, Defendant hired Kathleen

Lamb for the position.  (Def.'s Mot. Summ. J. Ex. 32.)  Lamb was 52 years old at the time she

was recruited and hired.  (Def.'s Statement Undisputed Fact ¶ 65.)  Lamb had a nursing degree,[7]

and she was employed as the Director of Hospice at Sacred Heart Hospital at the time she applied

to Defendant.  (Pl.'s Mot. Summ. J. Ex. T.)  She had served as Sacred Heart Director since 2004;

she had also worked as marketing and community relations manager, manager of intake and

---

[6]Plaintiff claims that this statement implies that only two of the seven questions were answered inadequately.  (Pl.'s Mot. Summ J. 19 ¶ 77.)  However, the Record shows that Defendant's statement does not support such an inference, and therefore the Court will regard this statement as a non sequitor.  (See Pl.'s Mot. Summ. J. Ex. E at 3.)

[7]Plaintiff characterizes Lamb as a "college dropout."  (Pl.'s Statement Undisputed Fact ¶ 6.)  Lamb's resume indicates 72 hours of college credits, plus her R.N.  (See Pl.'s Mot. Summ. J. Ex. T.)

referral, and clinical supervisor from 1994 to 2001 at Lifequest Home Care in Quakertown, Pennsylvania.  (Id.)  Mackey also held a nursing diploma and had worked at Sacred Heart, so Mackey was familiar with Lamb's background.  (Def.'s Statement Undisputed Fact ¶ 60.)  After she was hired by Defendant, Lamb served as Administrator for Defendant until May 2007 when the Plymouth Meeting facility was closed.[8]  (Id. at ¶ 64.)

Mackey stated in an affidavit that the prior Plymouth Meeting Administrator, Uma Arya, who was hired in 2004 and voluntarily resigned in late 2005 to relocate, was, as Plaintiff, over 50, Asian Indian, and India-born. (Def.'s Mot. Summ. J. Ex. 12, Mackey Aff. at ¶ 3.) Defendant's employee list confirms that a naturalized Asian female Administrator, born in 1954, was hired on August 3, 2004.  (Id. Ex. 35 at 1.)  Mackey further swore that she hired Ms. Arya, and Obriot stated in an affidavit that she was the recruiter at this time.  (Id. Exs. 6, 12.)  Plaintiff claims that these facts about the prior administrator are false but provides no Record support or contrary facts for this claim.  (Pl.'s Rebuttal Def.'s Statement Undisputed Fact ¶¶ 75-81.)

Defendant documents that it had an anti-discrimination policy in place as well as human resources guidelines issued in 2005 supporting a discrimination-free workplace.  (Def.'s Mot. Summ. J. Exs. 14, 15.)

## II.    Procedural History

### _____A.    Plaintiff's Initial Filings

Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) on August 14, 2006.  (Am. Compl. 9.)  Defendant filed a response on September 13, 2006.  (Pl.'s

---

[8]Plaintiff asserts that Lamb could not run the facility and implies that this was why it was shut down, but he provides no support for this statement.  (Pl.'s Rebuttal Def.'s Statement Undisputed Fact ¶ 64.)

Mot. Summ. J. Ex. E at 2.)  The EEOC issued Plaintiff a right to sue letter on April 13, 2007.

(Am. Compl. 9.)

Plaintiff filed a complaint pro se in the Montgomery County Court of Common Pleas on

July 10, 2007.  Defendant removed the case to this Court on August 14, 2007 (Doc. No. 1).

Plaintiff filed an Amended Complaint on August 22, 2007 (Doc. No. 4).  Plaintiff initially

alleged seven counts, but withdrew two of these counts—common-law fraud and the

Pennsylvania Unfair Trade Praces and Consumer Protection Law—on April 28, 2008 (Doc. No.

16).

### B.    Discovery Disputes and No Limits on Plaintiff's Discovery

Discovery in this case has been extremely contentious.  Plaintiff has made serious

misrepresentations in his brief concerning Defendant's opposition to, and the Court's rulings on,

discovery.

First, Plaintiff's own conduct during discovery was highly improper.  Plaintiff has

accused Defendant and defense counsel of being racists and defense counsel of committing

perjury.  (See Pre-trial Conference Tr. 24, 28, June 26, 2008, Doc. No. 87.)  Based on these and

other allegations of wrongdoing, Plaintiff has started a separate civil suit naming defense counsel

and some of Defendant's employees, among others, as defendants.  Waris v. Ormond, No. 08-

5709 (E.D. Pa. Dec. 9, 2008).  In addition, Plaintiff has a third civil case removed to this Court,

which arises out of the instant case's facts but in which he asserts only state law claims.  Waris v.

Heartland Home Health Servs., No. 09-297 (E.D. Pa. Jan. 22, 2009).

Second, the volume and nature of pretrial motions filed by both parties, but especially

Plaintiff, were unusual.  Because of this, on June 27, 2008, this Court ordered that Defendant

need not respond to Plaintiff's motions unless specifically requested by the Court (Doc. No. 68).

The Court saw no need to rule on several of Plaintiff's motions, and they will be denied as moot.

Third, on the topic of depositions, at the pretrial conference on June 26, 2008, the Court encouraged Plaintiff to take depositions to help him gather evidence to prove his case. (See Pretrial Conference Hr'g Tr. 29:9 et seq., June 26, 2008, Doc. No. 87.) Plaintiff indicated that he would take the deposition of corporate employee Obriot. (Id. at 19:12-19:21.) Although he eventually did send a notice for her deposition on July 30, 2008, this was only about two weeks in advance of the initial discovery deadline of August 16, 2008.[9] (See Pre-trial Conference Hr'g, Audio Aug. 19, 2008, Morning Session, 0:05:00-0:22:00 (discussing Obriot deposition and discovery deadlines).) At that time Ms. Obriot was no longer employed by the Defendant, resided in Michigan, and was beyond the 100-mile limit for deposition subpoenas. (See Def.'s Mot. Quash Subpoena Notice Obriot, Doc. No. 91.) Therefore the Court granted Defendant's Motion to Quash Plaintiff's subpoena for Obriot's deposition. (Order, Aug. 25, 2008, Doc. No. 110.) Yet Plaintiff never took the appropriate steps to take Obriot's deposition in Michigan, although he could have done so pursuant to Federal Rule of Civil Procedure 45.

Plaintiff also belatedly sent a notice for deposition to another former corporate employee, Jeff Schulte, on July 31, 2008 (see Def.'s Mot. Quash Subpoena Notice Schulte et al., Doc. No. 92), which this Court recently quashed by separate Order (Doc. No. 143).

As to the Plaintiff's desire to depose corporate employee Mackey, Plaintiff and defense counsel initially disputed the circumstances surrounding Mackey's appearance. Defendant

---

[9]Discovery was extended, but only as to Plaintiff's medical records, independent medical exam, and related matters (see Order, Aug. 8, 2008 ¶ 6, Doc. No. 89); Mackey's deposition (see Order, Aug. 25, 2008 ¶ 4, Doc. No. 110); and Schulte's potential deposition (id.).

asserts Plaintiff did not appear at the originally scheduled time on August 14, 2008.  (See Def.'s

Supp. Mem. Mot. Contempt & Sanctions 3-5, Doc. No. 95.)  Giving Plaintiff the benefit of the

doubt, in an Order dated August 25, 2008 (Doc. No. 110 ¶ 3), the Court required Defendant to

produce Mackey for a second time for deposition.  As to Plaintiff's claim that the Court limited

him to one three-hour deposition (see Pl.'s Mot. Summ. J. 4 ¶ 9),  Plaintiff himself stated that the

Mackey deposition only required three hours (see Hr'g, Audio Aug. 19, 2008, Morning Session,

0:35:20-0:35:22, Doc. No. 100).

Following discovery, Defendant filed its Motion for Summary Judgment on October 17,

2008 (Doc. No. 128).  Plaintiff filed his own Motion for Summary Judgment on October 20,

2008 (Doc. No. 130).

**III.   Parties' Contentions**

Plaintiff's remaining counts are as follows: (I) race and national origin discrimination

under Title VII of the Civil Rights Act of 1964, (2) race discrimination under Section 1981 of the

Civil Rights Act of 1866, (3) age discrimination under the Age Discrimination in Employment

Act (ADEA), (4) race and national origin discrimination under Title VI of the Civil Rights Act of

1964, and (5) race and national origin discrimination under the Pennsylvania Human Relations

Act (PHRA).

**A.   Plaintiff's Motion for Summary Judgment**

**1.   Plaintiff's Contention in his Motion**

Plaintiff first asserts that he is entitled to a relaxed standard as a pro se Plaintiff.  As to

the merits of his claim, Plaintiff states that he has satisfied the McDonnell Douglas test to show

discrimination under the applicable statutes.  First, Plaintiff argues that he meets the elements of

a prima facie claim for failure to hire since he was a member of a protected class, met the

minimum job qualifications, was rejected, and the position was filled by a younger Caucasian.

Specifically, as to his age discrimination claim, Plaintiff argues that he does not have to be

replaced by someone outside the protected age class, but merely by someone sufficiently

younger.  Second, Plaintiff contends that Defendant's proffered reason for not hiring Plaintiff

kept changing.  Third, Plaintiff argues that all of Defendant's stated reasons for not hiring him

were pretext for discrimination because Defendant made false statements to Plaintiff that another

candidate was already hired when in fact one was not, Plaintiff was treated differently than other

candidates, and Plaintiff was better qualified than the candidates selected.  In addition, Plaintiff

argues that statistics about Defendant's recent employees, and an unrelated age discrimination

suit filed against Defendant in the Western District of Pennsylvania, serve as evidence of

Defendant's discriminatory animus.

### 2.    Defendant's Response to Plaintiff's Motion

Defendant responds that Plaintiff has misstated Defendant's burden on summary

judgment.  In addition, Plaintiff is not entitled to a relaxed standard as a pro se Plaintiff with

regards to procedural rules, and further Plaintiff is a serial filer.  On the merits, Defendant argues

that Plaintiff has not shown a prima facie case because he has not shown circumstances that give

rise to the inference of discrimination, Defendant's reason for not hiring Plaintiff was legitimate,

and Defendant was consistent in its reason for not hiring Plaintiff.  In the alternative, Defendant

argues that any inconsistencies in Defendant's stated reasons do not allow the inference of

pretext.  As to supporting evidence, Plaintiff's statistics and an unrelated case against Defendant

are not relevant to the instant case.  Finally, Defendant asserts that even if it could have guessed

at Plaintiff's protected characteristics at the time it considered Plaintiff's application, it initially

selected Plaintiff for an interview despite knowledge of these characteristics.

        3.     Plaintiff's Reply to Defendant's Response

Plaintiff replies that his superior job qualifications speak for themselves and that

Defendant is mis-applying the McDonnell Douglas test.

**B.**     **Defendant's Motion for Summary Judgment**

        1.     Defendant's Contentions in its Motion

Defendant contends that Plaintiff has failed to show discrimination on the basis of race,

age, or national origin because Plaintiff has failed to establish a prima facie case of

discrimination and Plaintiff has not shown pretext for Defendant's legitimate reason for not

hiring him.  Instead, Defendant argues that Plaintiff relies on his own subjective belief of the

superiority of his candidacy and that Defendant had no knowledge of Plaintiff's protected

characteristics when it made its hiring decision.  In addition, Defendant argues that Plaintiff does

not meet the statutory requirements to state a cause of action for employment discrimination

under Title VI.  Finally, Defendant asserts that Plaintiff has not shown malice or reckless

disregard to support his claim for punitive damages.

        2.     Plaintiff's Response to Defendant's Motion

Plaintiff counters that Defendant has failed to apply the McDonnell Douglas burden-

shifting test applicable to discrimination claims.  Plaintiff further argues that Defendant's stated

reasons as to why it declined to hire Plaintiff were inconsistently applied vis a vis the other job

candidates, including gaps in employment history and superior credentials.  Plaintiff asserts that

Defendant's past hiring of an employee with protected characteristics similar to Plaintiff's is

irrelevant to the current litigation.

### 3.     Defendant's Reply to Plaintiff's Response

Defendant replies by re-iterating its argument that Plaintiff has failed to show a prima

facie case of discrimination or pretext.  Defendant contends that Plaintiff's resume raised red

flags not raised by the other candidates and that Plaintiff demonstrated by his own actions that he

was not the best candidate for the job.  Further, evidence of a previous hire was relevant.

### 4.     Plaintiff's Sur-Reply

Plaintiff filed a Motion to File a Sur-Reply Brief in order to respond to Defendant's

claims about an unrelated case filed by Plaintiff, now pending in the Fifth Circuit.

## III.   **Legal Standard**

The standards by which a court decides a summary judgment motion do not change when

the parties file cross-motions.  Se. Pa. Transit Auth. v. Pa. Pub. Util. Comm'n, 826 F. Supp.

1506, 1512 (E.D. Pa. 1993).  Summary judgment is appropriate "if the pleadings, the discovery

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict

for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual

dispute is "material" if it might affect the outcome of the case under governing law.  Id.

A party seeking summary judgment always bears the initial responsibility for informing

the district court of the basis for its motion and identifying those portions of the record that it

believes demonstrate the absence of a genuine issue of material fact.  Celotex v. Catrett, 477 U.S.

317, 322 (1986)).  Where the non-moving party bears the burden of proof on a particular issue at

trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325.  After the moving party has met its initial burden, the adverse party's response must, "by affidavits or as otherwise provided in this rule [ ] set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party.  Anderson, 477 U.S. at 255.

## IV.   Discussion

The Court will first discuss Plaintiff's Motion and then will analyze Defendant's Motion as it relates to the substantive merits of Plaintiff's claims.

### A.    Plaintiff's Motion for Summary Judgment

Plaintiff's burden on its Motion is described as follows.  Proof of discrimination requires proof of intent to discriminate.  Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1072 (3d Cir. 1996) ("[A] finding of discrimination is at bottom a determination of intent").  It is, of course, well accepted that such proof can be presented by circumstantial, as opposed to direct, evidence, but in that event, the Court must resort to the McDonnell Douglas burden-shifting test. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973)).  The Plaintiff has a high burden to meet in moving for summary judgment in a discrimination case, because the Plaintiff bears the burden of proof of discrimination at trial.  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981) ("The ultimate burden of persuading the trier of fact that the defendant

intentionally discriminated against the plaintiff remains at all times with the plaintiff.").  To award judgment as a matter of law for Plaintiff, the Court must find that either Plaintiff has direct, uncontradicted evidence of discrimination or uncontradicted evidence that Defendant's reason for not hiring Plaintiff was a pretext for discrimination.

In this case, there is nothing in the Record from which the Court can find direct evidence that Defendant discriminated against Plaintiff or intended to do so.  Plaintiff states that his "statistics" and an unrelated age discrimination suit filed against Defendant serve as direct evidence of discrimination, but the Court rejects this evidence as discussed infra Part IV.B.3.e, f. Beyond this evidence, Plaintiff's Motion relies on the McDonnell Douglas burden-shifting test, because Plaintiff, by his own admission, has only circumstantial evidence to rely on.

The cases are uniform that the party with the burden of proof in a discrimination case must show no genuine issue of material fact exists as to discrimination in its summary judgment motion, more than merely showing a prima facie case of discrimination.  See Hankins v. Temple Univ. (Health Sci. Ctr.), 829 F.2d 437, 440 (3d Cir. 1987) ("In a discrimination case, our task is to determine whether, upon viewing all of the facts and reasonable inferences to be drawn therefrom in the light most favorable to the [non-moving party], there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff.").

Pretext is a factual issue on which Plaintiff has the burden, and the disputed facts regarding pretext are analyzed below.  Since Plaintiff has not shown that the undisputed facts show discrimination, or intent to discriminate, or even allow an inference of discrimination, the Court cannot grant judgment as a matter of law for the Plaintiff.

**B.      Defendant's Motion for Summary Judgment and Failure to Hire Claim**

Turning to the substantive issues in this case, Plaintiff claims that he was discriminated against because of Defendant's failure to hire him in violation of Title VII, Section 1981, Title VI, the ADEA, and the PHRA.  This Court, like both parties in this case, will apply the familiar McDonnell Douglas burden-shifting test in order to evaluate this claim of discrimination.[10] McDonnell Douglas, 411 U.S. at 802-04.  The test was originally formulated to apply to Title VII claims, but it has also been applied to discrimination claims under the other statutes at issue here. See Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 385 (3d Cir. 1999) (§ 1981);  Manning v. Temple Univ., 157 Fed.Appx. 509, 513 (3d Cir. 2005) (Title VI); Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142 (2000) (assuming arguendo that McDonnell Douglas applies to the ADEA); Tomasso v. Boeing Co., 445 F.3d 702, 704 (3d Cir. 2006) (PHRA).

**1.      Prima Facie Case**

In the first step of the burden-shifting framework, the plaintiff has the burden to establish a prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at 802.  The elements of a prima facie case for a failure to hire claim are as follows: (1) the plaintiff belongs to a protected class; (2) he applied and was qualified for the position to which the employer was seeking applicants; (3) despite his qualifications, he was rejected; and (4) after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.  See Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (citing McDonnell

---

[10]Plaintiff argued in his Response to Defendant's Motion that Defendant was "scared of applying the McDonnell Douglas test."  (Pl.'s Opp'n Def.'s Mot. Summ. J. 2.)  This argument has no merit because even though Defendant did not cite McDonnell Douglas directly, it cited and applied numerous Third Circuit cases that have applied McDonnell Douglas.

Douglas, 411 U.S. at 802).

The Defendant's brief incorrectly states that to establish a prima facie case, Plaintiff must also establish that "the action occurred under circumstances giving rise to an inference of discrimination."  (Def.'s Mot. Summ. J. 10 (citing Stewart v. Rutgers State Univ., 120 F.3d 426, 432 (3d Cir. 1997); Bennun v. Rutgers State Univ., 941 F.2d 154, 170 (3d Cir. 1991)).)  However Defendant misconstrues the proper prima facie standard, and the cases it cites do not support its argument.  An "inference of discrimination" is not an element of the generally applicable prima facie standard.[11]  Instead, if a plaintiff is able to establish a prima facie case, the Third Circuit has stated that this existence of a prima facie case establishes an inference of discrimination. Pivorotto v. Innovative Sys., Inc., 191 F.3d 344, 352 (3d Cir. 1999) (noting that the purpose of the prima facie case is to raise an "inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors").

Plaintiff has established a prima facie case of discrimination.  First, Plaintiff is a member of a protected class because he is of Indian origin, is Indian-Asian, and was sixty years old at the time he applied to the position.  Second, Plaintiff applied for the Administrator position, and Defendant admits that Plaintiff met the minimum education and experience qualifications for the

---

[11]The Third Circuit has included an "inference of discrimination" as part of the four-prong prima facie test in age discrimination cases.  See Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1084 (3d Cir. 1996) (stating that the fourth prong is that the plaintiff was rejected "in favor of a person who was sufficiently younger to permit an inference of age discrimination" (internal quotations omitted)); see also Williams v. St. Joan of Arc Church, 226 Fed.Appx. 180, 183 (3d Cir. 2007).  However an "inference of discrimination" becomes applicable in age discrimination cases in order to compare the relative ages of the plaintiff and his or her replacement, not the overall facts.  See McDonnell Douglas, 411 U.S. at 802 n.13 (noting that the prima facie test may vary in accordance with the specific factual situation).

position.  Third, Plaintiff was not offered an interview and was rejected for the position.  Fourth, following Plaintiff's rejection in May or June 2006, Defendant continued to seek to fill the position with someone also meeting the minimum qualifications.  The position was eventually filled in October 2006 by Mrs. Lamb, who is native born, Caucasian, and younger.

Defendant argues that Plaintiff has not shown a prima facie case of age discrimination since the position was filled by a woman who was fifty-two years old, and therefore she is also a member of the protected class under the ADEA.  This argument fails.  The Third Circuit has stated that an ADEA plaintiff need not show that the successful candidate was not in the protected class, i.e. below age forty.  Barber v. CSX Distribution Serv., 68 F.3d 694, 699 (3d Cir. 1995).  Instead, in the fourth prong of the prima facie case, the court looks to whether the replacement employee was "'sufficiently younger' to permit an inference of age discrimination." Id. (citing Maxfield v. Sinclair Int'l, 766 F.2d 788, 792 (3d Cir. 1985)).  In Barber, the court found that an eight-year age difference was "sufficiently younger" to establish a prima facie case of age discrimination, and other cases have found a prime facie case where a lesser age gap existed.  See Martin v. Healthcare Bus. Res., 2002 WL 467749, at *5 n.7 (E.D. Pa. 2002) (stating that for a prima facie ADEA claim, there must be an age difference of at least five years). Because the candidate eventually hired to the Administrator position was eight years younger than Plaintiff, he has established a prima facie case of age discrimination.

### 2.  Defendant's Legitimate, Nondiscriminatory Reason

After Plaintiff has shown a prima facie case, the burden shifts to Defendant to show a legitimate, nondiscriminatory reason for its failure to hire.  See McDonnell Douglas, 411 U.S. at 802-04.  Although Plaintiff argues that Defendant's inconsistent reasons for failing to hire

-20-

Plaintiff preclude Defendant from meeting its burden, the Court does not agree.  Defendant has

documented that Plaintiff's insufficient responses to its employment questionnaire led Defendant

to conclude that Plaintiff was not the best candidate for the job.  (See Def.'s Mot. Summ. J. Exs.

7, 8 at 160-62, 12; Def.'s Opp'n Pl.'s Mot. Summ. J. Ex. B at 3, 5.)

Plaintiff claims Defendant originally implied in its EEOC Position Statement that only

two of his seven questionnaire responses were insufficient and then later claimed all seven of the

responses were insufficient.  However, the Court's reading of the Record does not support this—

Defendant's EEOC Statement (Pl.'s Mot. Summ. J. Ex. E), and also Mackey's Affidavits and

Deposition (Def.'s Mot. Summ. J. Exs. 7, 8, 12), consistently state that all seven of Plaintiff's

responses were insufficient, which demonstrated to Defendant that Plaintiff was not the best

candidate for the job.  Even though Plaintiff met the minimum qualifications for the job and was

originally selected for an interview, Defendant has documented in the Record of this case that the

poor quality of Plaintiff's questionnaire answers was its reason for deciding not to pursue

Plaintiff's candidacy further.[12]  Therefore Defendant has met its "relatively light" burden as

required at this stage in the burden-shifting analysis.  See Woodson v. Scott Paper Co., 109 F.3d

913, 920 n.2 (3d Cir. 1997) (noting that a defendant's burden is satisfied if defendant articulates

_____

[12]Plaintiff relies heavily on Obriot's e-mails to Plaintiff, which contain erroneous
statements as to why he was not hired.  Specifically her June 29, 2006, e-mail to Plaintiff stated:
"You were not selected for the administrator position because they went with a candidate that
had more experience."  (Pl.'s Mot. Summ. J. Ex. J.)  Her July 6, 2006, e-mail to Plaintiff stated
that the position was filled "with local candidates who were already in the interviewing process
prior to receiving your resume."  (Id. Ex. Q.)  In fact, the position remained open until October
2006.  Although Obriot's statements were incorrect and no other candidate had been hired,
Obriot did not have hiring authority, and her e-mail will not be construed as Defendant's sole
non-discriminatory reason for not hiring Plaintiff.

    This argument is further addressed infra pp. 27-29 in the Court's discussion of pretext.

any legitimate reason for the adverse employment action and that defendant need not prove that the articulated reason was its actual reason for the action).

### 3.     Evidence of Pretext

Under McDonnell Douglas, the burden then shifts back to the plaintiff to show that the defendant's proffered reason was pretextual.  411 U.S. at 804.  The plaintiff can show pretext by submitting evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons or (2) believe that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.  Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).  A plaintiff does not discredit the employer's proffered reason merely by showing that the adverse employment decision was mistaken, wrong, imprudent, unfair, or even incompetent.  Id. at 765.  Rather, a plaintiff must show such weaknesses, implausibilities, inconsistencies, incoherence or contradictions in the reasons articulated by the employer that a jury reasonably could find them unworthy of credence.  Id.  The ultimate burden of proving that a defendant engaged in intentional discrimination remains at all times on the plaintiff.  St. Mary's Honors Ctr. v. Hicks, 509 U.S. 502, 507, 511 (1993).

Plaintiff asserts several arguments to establish pretext, and Defendant rebuts these arguments and adds an argument of its own.  The Court addresses each argument as follows.

### a.     Plaintiff's Claim that He Is Better Qualified

First, Plaintiff asserts he is better qualified for the position than Lamb.  Plaintiff cites to his two graduate degrees compared to Lamb's two-year nursing degree and his greater number of

years of experience.[13]  However, both Lamb and Plaintiff met the minimum qualifications for the

Administrator position and both were initially selected for an interview.  Defendant does not

claim that Plaintiff's lack of qualifications led to its failure to hire Plaintiff, but rather asserts that

Plaintiff's inadequate questionnaire answers caused his rejection.[14]  (See Def.'s Mot. Summ. J.

Exs. 7, 8 at 160-62, 12; Def.'s Opp'n Pl.'s Mot. Summ. J. Ex. B at 3, 5.)  Therefore, Plaintiff's

assertions that he was better qualified do not show pretext because these assertions do not relate

to Defendant's stated reason for not hiring him.

Further, Plaintiff's beliefs and opinions as to his own superior qualifications are

insufficient to show pretext.  See Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991),

overruled in part on other grounds by, St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993) ("The

fact that an employee disagrees with an employer's evaluation of him does not prove pretext.");

Andy v. United Parcel Serv., 2003 WL 22697194, at *6 (E.D. Pa. 2003), aff'd, 111 Fed.Appx.

670 (3d Cir. 2004) ("[T]he Court must look only at the perception of the decision maker, not the

plaintiff's own view of his performance.").  Plaintiff correctly cites to cases that state that

evidence of a plaintiff's superior qualifications can be used to show pretext.  See Ash v. Tyson,

546 U.S. 454, 458 (2006) (per curiam) (citing Aka v. Washington Hosp. Ctr., 156 F.3d 1284

(D.C. Cir. 1998) (stating that a reasonable factfinder could legitimately  infer discrimination

---

[13]Plaintiff incorrectly asserts that Lamb only had two years of relevant experience (Pl.'s Opp'n Def.'s Mot. 6.)  Plaintiff ignores Lamb's seven years of management at Lifequest Homecare, which also serves as relevant experience and is comparable to Plaintiff's experience as reflected in their respective resumes.  (See Pl.'s Mot. Summ. J. Exs. A, T.)

[14]Plaintiff argues that Obriot's June 26 and July 5, 2006 e-mails state that Defendant rejected Plaintiff in favor of a more experienced candidate.  In fact, no candidate had yet been hired, and Obriot's e-mails are not authoritative.  See discussion supra note 12.

where the plaintiff was significantly better qualified)); <u>Patterson v. McLean Credit Union</u>, 491
U.S. 164 (1989), <u>superseded by statute on other grounds</u>, Civil Rights Act of 1991, Pub. L. 102-
166.  However, <u>Aka</u> states that where employees' qualifications are similar or where the
employer's decision was based on subjective considerations, a finding of pretext based on
plaintiff's allegedly superior qualifications is not appropriate.  <u>Id.</u>  "The Third Circuit has made it
clear that a plaintiff does not show that an employer is relying on a pretext merely because the
employer relied on subjective criteria in making its hiring decision."  <u>Snik v. Verizon Wireless</u>,
2004 WL 1151711, at *11 (E.D. Pa. 2004) (citing <u>Ezold v. Wolf, Block, Schorr & Solis-Cohen</u>,
983 F.2d 509, 527 (1992)).

 In the instant case, both Plaintiff and Lamb met the minimum qualifications established
for the position, since both possessed one of the required degrees and had nine (Lamb) and
eleven (Plaintiff) years of relevant experience.  Defendant rejected Plaintiff's candidacy based on
its perception of inadequacies in Plaintiff's answers to the questionnaire, despite Plaintiff
meeting these minimum standards.  Therefore, Plaintiff's assertions of his superior qualifications
neither undermine Defendant's proffered reason for not hiring him, nor do they lead to the
reasonable belief that Plaintiff was not hired due to discrimination.

 b.   Plaintiff's "Red Flags" and Written Questionnaire

 Second, Plaintiff asserts that no other candidates were given the written questionnaire that
he was required to answer, even though Plaintiff contends that other candidates' resumes raised
the same "red flags" that Defendant asserts were raised by Plaintiff's resume.  The "red flags"
that Defendant identified in Plaintiff's application were part-time employment, gaps in
employment, short duration of employment, and irrelevant experience.  Defendant asserts that

-24-

Plaintiff's resume raised these "red flags" because he had no full-time employment for the two years prior to his application to Defendant, his previous full-time position as an administrator at Humble Health Care only lasted two months, and his current part-time teaching positions were unrelated to the position he sought with Defendant.  (See Def.'s Statement Undisputed Facts ¶ 26-31.)  The factual Record supports Defendant's perceptions about Plaintiff.  (Def.'s Mot. Summ. J. Ex. 4, Waris Resume.)[15]

Plaintiff asserts that Alan Kagan—a Caucasian candidate who was selected for an interview and interviewed—had similar "red flags" on his resume.  There is an employment gap apparent from Kagan's resume; he does not list employment from October 2003 until August 2004.  (See Pl.'s Opp'n Def.'s Mot. Ex. 5.)  In addition, Kagan held one position of relatively short duration (eleven months at American Home Patient) and was at his current position seven months prior to applying to Defendant.  (Id.)  However, Kagan's most recent two positions were as general manager of hospice and home healthcare companies, which is more relevant than Plaintiff's most recent part-time teaching positions.

Plaintiff further asserts that candidate Kevin Massino—also Caucasian, selected for an interview, and interviewed—held several jobs of short duration (three positions held for approximately one year each).  (See Pl.'s Opp'n Def.'s Mot. Ex. 6.)[16]

_____

[15]Plaintiff had a brief period of full-time employment in the two years prior to his application to Defendant, from June 2005 to August 2005, but this only lasted two to three months.  (See Def.'s Mot. Summ. J. Ex. 9.)  His full-time employment prior to that position ended in 2004.  (Id.)

[16]The Court does not agree with Plaintiff's assertion that interviewed candidate Gregory Field's resume indicates equally short durations of employment as Plaintiff's prior two-month employment.  Field's previous related positions each lasted over two years.  (See Pl.'s Opp'n Def.'s Mot. Ex. 7.)

The Court does not agree with Plaintiff that Kagan and Massino's resumes exhibit the same "red flags" raised by Plaintiff's resume.  As Defendant argues, unlike the other candidates, Plaintiff had no relevant experience during the two years prior to his application except for a brief position, and this most recent relevant position only lasted two or three months.  But these "red flags" did not bar Plaintiff's candidacy.  Instead, the undisputed facts show that after Defendant reacted by requesting additional information from Plaintiff (a non-discriminatory and valid request), it was Plaintiff's answers to the screening questionnaire that Defendant concluded were inadequate, and only then did Defendant disqualify Plaintiff.  As stated above, the Court can properly only consider Defendant's view of the short-comings of Plaintiff's application, not the fact that Plaintiff disagrees with those views.  See Andy, 2003 WL 22697194, at *6; see also Thompson v. Sears, Roebuck & Co., 2006 WL 3144129, at *6 (E.D. Pa. 2006).  Defendant documented that Plaintiff's resume raised serious substantive issues that it felt necessitated additional screening.  Plaintiff has shown no evidence of pretext in the Record, except his own disagreement, which is legally insufficient.

Further, Plaintiff argues that Defendant should have asked him to explain any perceived shortcomings in his resume.  The Court disagrees.  Defendant was under no obligation to ask Plaintiff about any gaps or inconsistencies in his experience.  Defendant, as an at-will employer, may establish whatever screening characteristics it chooses, as long as those characteristics are not discriminatory.  "Title VII eliminates certain bases for distinguishing among employees while otherwise preserving employers' freedom of choice."  Price Waterhouse v. Hopkins, 490 U.S. 228, 239 (1989), modification by statute recognized in, Desert Palace, Inc. v. Costa, 539 U.S. 90, 98-102 (2003) (discussing the impact of 42 U.S.C. 2000e-2(m) on mixed motive cases).

Although Plaintiff was the only candidate given the pre-interview screening questionnaire that led to Defendant's decision not to hire him, Defendant's conduct at the time shows that it believed its use of this questionnaire was warranted, its conduct was not based on discriminatory grounds, and Plaintiff has no evidence of pretext.

Plaintiff has not shown weaknesses or evidence of pretext in Defendant's proffered reason such that a reasonable fact finder would find it "unworthy of credence," as required by Fuentes, 32 F.3d at 765.  Nor has Plaintiff shown "not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason."  Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997).  Plaintiff's arguments alone do not establish pretext.  Also importantly, there is no evidence of intent to discriminate.  It was not the use of the questionnaire, but Plaintiff's answers to the questionnaire, that caused Defendant to not hire Plaintiff.  There is no evidence that Defendant's characterization of Plaintiff's answers as inadequate was pretextual.

c.   Defendant's Stated Reasons for Not Hiring Plaintiff

Third, Plaintiff claims that Defendant's shifting reasons for not hiring him establish pretext.  As explained above, Defendant's proffered reason for not interviewing, and also not hiring, Plaintiff was that his answers to the questionnaire demonstrated that Defendant was not the best candidate for the job.  The Court has concluded that recruiter Obriot incorrectly advised Plaintiff in e-mails dated June 29 and July 5, 2006, by stating that he had not been hired because they had already filled the position, when in fact the position remained open.  See supra notes 12, 14.  These e-mails were in response to repeated e-mails by Plaintiff requesting information as to why he was not hired.  (See Pl.'s Mot. Summ. J. Exs. I, Q.)  Yet Obriot was not responsible for

-27-

hiring decisions, and there is no evidence that she gave Plaintiff incorrect information for any improper reasons.

In fact, the Record supports the conclusion that Obriot did not know that the position remained open.[17]  Mackey had interviewed candidate Gregory Field for the position on May 31 (Def.'s Statement Undisputed Fact ¶ 53), and he appears to have been interviewed again on June 12 (see Pl.'s Opp'n Def.'s Mot. Summ. J. Ex. 3).  He was offered the job sometime after June 23 but declined it (Def.'s Mot. Summ. J. Ex. 28; Id. Ex. 8, Mackey Dep. at 169:11-169:14).  An e-mail from Obriot to a co-employee on July 9, 2006, after she wrote the two e-mails to Plaintiff stating that another candidate had been hired, allows the inference that she was not aware that Field had declined the job.  (Pl.'s Mot. Summ. J. Ex. R.)  Plaintiff offers no further evidence for a contrary or pretextual inference.  Instead, Mackey had hiring authority, Mackey's statements about her decision to not hire Plaintiff are consistent, and Plaintiff has no facts to show that decision was pretextual or that Mackey intended to discriminate.

Whether Obriot's statements are considered as wrong or contradictory, according to case law, her statements to Plaintiff are insufficient to establish pretext.  Where the plaintiff has created only a weak issue of fact as to whether the employer's reason was untrue and the rest of the evidence shows that no discrimination occurred, summary judgment is appropriate.  See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 148 (2000); Massey v. U.S. Customs & Border Prot., 2004 WL 3019234, at *9 (E.D. Pa. 2004) (granting summary judgment where plaintiff could not show that employer's inconsistent treatment of the plaintiff was material or in

---

[17]Plaintiff himself argues that Obriot did not know whether Field had been hired.  (Pl.'s Mot. Summ. J. 21 ¶ 89.)

any way related to race or age discrimination).  As this Court explained in a previous case,

regardless of the defendant's stated reason for terminating plaintiff, where the uncontested record

evidence shows that defendant's reason was legitimate and non-discriminatory, summary

judgment in employment discrimination is appropriate.  <u>Andy</u>, 2003 WL 22697194, at *6.  Here,

despite Obriot's e-mail statements to Plaintiff, Defendant has consistently stated that the reason

for not hiring Plaintiff was that his questionnaire answers demonstrated that he was not the best

candidate.  Statements by an employee without hiring authority and knowledge of the process do

not undermine this reason nor establish pretext.

        d.      Greg Field Questionnaire

Fourth, Plaintiff attempts to establish pretext based on some lingering factual issues in the

Record concerning Field's candidacy for the Administrator position.  Field was initially

interviewed May 31, 2006 by Mackey and offered the position sometime after June 23, 2006.

Plaintiff relies on a one-page document with hand-writing, titled "Greg Field" followed

by "Interviewed by Deb McMonagle 6/12/06," Bates No. HHHS-556.  (<u>See</u> Pl.'s Opp'n Def.'s

Mot. Summ. J. Ex. 3.)  This document is a questionnaire with four type-written questions, some

sub-questions, and what may be Field's verbal answers written in in the handwriting of Ms.

McMonagle, an employee of Defendant, whom the Record shows was involved in additional

interviewing.[18]  Although Plaintiff has attached this document to his Opposition Motion, he does

not further explain it in his brief.  Plaintiff apparently never deposed Field or McMonagle and did

---

[18]A comparison of Field's hand-writing on his employment application (Def.'s Mot.
Summ. J. Ex. 26) with the hand-writing on the questionnaire (Pl.'s Opp'n Def.'s Mot. Summ. J.
Ex. 3) shows that the hand-writings are clearly different.  In addition, the answers to the specific
questions are not written in the first person, are not complete sentences, and appear to be notes of
responses versus the responses themselves.  (<u>Id.</u>)

not develop the factual Record with regards to this document, so the Court cannot give this document any weight.  The Defendant has not commented on this document in its Reply brief.

Plaintiff cites this document to contend that Field's answers to these questions are shorter than Plaintiff's answers to the pre-interview questionnaire that Plaintiff completed.  (Pl.'s Rebuttal Def.'s Statement Undisputed Fact ¶ 57.)  However, as is obvious, this document consists of entirely different questions than those posed to Plaintiff, so the answers can not be compared to one another.  Further, the Field questions were completed after Field's initial interview with Mackey on May 31 and inferably were answered during the interview process, not as a pre-interview screening device.  In addition, the document appears not be a "questionnaire," but rather a list of questions for an oral interview containing McMonagle's notations of Field's verbal answers.

Since Plaintiff has the burden of showing pretext, Plaintiff had the obligation, but failed, to develop the Record as to this document concerning its origin and what, if any, use the Defendant made of it.  Plaintiff could have done so by deposing Field and/or McMonagle,[19] but did not do so.  Perhaps Defendant did not respond to Plaintiff's allegation regarding this document because Plaintiff failed to make any factual development of it that would be admissible at trial.  Courts have held that a party submitting a document in support of summary judgment should show the document as being admissible at trial.  Williams v. Borough of West Chester, Pa., 891 F.2d 458, 466 (3d Cir. 1989) ("[W]hat is produced at the summary judgment stage must set forth evidence 'as would be admissible' at trial, Fed. R .Civ. P. 56(e), and thus must be

---

[19]Plaintiff never sought to depose either Field or McMonagle.  See discussion of discovery infra Part II.B.  Although Plaintiff took only one deposition in this case, this was the result of his own actions during discovery and not any restraints imposed by Court order.  See id.

'reduc[ible] to admissible evidence.'" (quoting Celotex, 477 U.S. at 327))).  The document is not

admissible without testimony, and there is no such testimony, or offer of testimony in the Record.

As such, the Court will not consider the Field interview questionnaire as evidence of pretext.

    e.  Statistics of Recent Hires

   Fifth, Plaintiff cites to "statistics" that he asserts demonstrate a discriminatory hiring

process.[20]  Contrary to Defendant's assertion, statistical evidence can be used in an individual

disparate treatment employment discrimination case.  See Abrams v. Lightolier, Inc., 50 F.3d

1204, 1217 (1995) ("Employment discrimination plaintiffs are not precluded from introducing

statistical evidence as circumstantial evidence of discrimination in a disparate treatment case.");

Tyler v. Se. Pa. Transp. Auth., 2002 WL 31965896, at *4 (E.D. Pa. 2002), aff'd, 85 Fed.Appx.

875 (2003) (table opinion) (noting that a disparate treatment plaintiff may use statistics to show

that defendant was conforming to a general pattern of discrimination).  "Statistical proof in Title

VII cases must be evaluated in light of the 'surrounding facts and circumstances.'" Goodman v.

Lukens Steel Co., 777 F.2d 113, 130 (3d Cir. 1985) (quoting Int'l Bhd. Teamsters v. United

States, 431 U.S. 324, 340 (1977)).  "Scientific evidence, such as statistics, is regarded as reliable

if an expert has 'good grounds' for his testimony, i.e., his opinions are 'based on the methods and

procedures of science rather than on subjective belief or unsupported speculation.'"  Finch v.

Hercules Inc., 941 F.Supp. 1395, 1415 (D.Del.,1996) (quoting United States v. Velasquez, 64

F.3d 844, 849 (3d Cir.1995)).

---

   [20]Plaintiff appears to claim that these statistics serve as direct evidence of Defendant's
discrimination, not as evidence of pretext.  (Pl.'s Mot. Summ. J. 35.)  However, these statistics
are not strong enough to show direct evidence of discriminatory intent and therefore will be
analyzed under the third prong of the McDonnell Douglas analysis as evidence of pretext.

Plaintiff's so-called "statistics" involve no mathematics or quantitative analysis, are not supported by any expert report or affidavit, and therefore Plaintiff has not shown that they are based on scientific methods and procedures.  Instead this evidence consists of three documents entitled "Employee Lists" from various dates in 2006 and 2007.  The lists include such information as department description, ID, birthdate, gender, national origin, job title, and hire date.  These lists show that of the three Director or Administrator positions Defendant employed in 2006 and January 2007, all three were white, and two of the three were under age thirty.

These lists in no way suggest discrimination or pretext by Defendant.  First, Plaintiff's sample size of three Director or Administrator positions is too small to imply any sort of discriminatory practice by Defendant.  Second, Plaintiff does not assert the number of minority or ADEA-protected candidates that <u>applied</u> for these positions, so the fact that non-protected candidates were <u>employed</u> is meaningless to support Plaintiff's failure to hire claim.  Third, Defendant is able to rebut Plaintiff's claims of discriminatory hiring because the previous Administrator, Uma Arya, who held the position to which Plaintiff applied, was Indian-born, Asian-Indian, and fifty-two years old, therefore possessing the same protected characteristics as Plaintiff, as shown in its statistics from 2005.  (Def.'s Mot. Summ. J. Ex. 35.)  In addition, Mackey hired Arya, and Obriot served as recruiter at this time.  (Def.'s Mot. Summ. J. Exs. 6, 12.)  Evidence about this previous hire by Defendant not only rebuts Plaintiff's statistical evidence but itself serves to rebut Plaintiff's claims of pretext and discriminatory intent.  For the above reasons, Plaintiff's statistics in no way show that Defendant's reason was pretextual or lead to an inference of discrimination.

f.      Unrelated Discrimination Cases Involving Both Parties

-32-

Sixth, Plaintiff cites as direct evidence an unrelated age discrimination case pending against Defendant in the Western District of Pennsylvania.  Similarly, Defendant cites to an unrelated discrimination case brought by Plaintiff in Texas.  Neither of these cases relate to the instant matter in that the case pending against Defendant involves a different Plaintiff, and the case instituted by Plaintiff involves a different Defendant.  In addition, the other case against Defendant is a hostile work environment and unlawful termination claim, instead of a failure to hire claim, involves a different office of the Defendant's, and relates to different decision makers.  The other case instituted by Plaintiff involved unlawful termination, and therefore that defendant's reasons for its adverse employment action against Plaintiff are necessarily very different than Defendant's reason in the instant case.  Further, if Defendant seeks to argue that Plaintiff's other suit supports its decision not to hire Plaintiff, after-acquired evidence of a plaintiff's "wrongdoing" is not a defense to Title VII liability.  See McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 360 (1995) (noting that "the employer could not have been motivated by knowledge it did not have" at the time of the adverse action).  The Court will consider these cases no further.

g.  Employer's Knowledge of Protected Characteristics

Defendant argues that Plaintiff's claim fails because Mackey and Obriot were unaware of Plaintiff's protected characteristics at the time they made hiring decisions.  An employer's knowledge of the plaintiff's protected characteristic is an important element in order to establish the inference of discrimination.  Geraci v. Moody-Tottrup, Int'l, Inc., 82 F.3d 578, 581 (3d Cir. 1996) (describing knowledge as a critical element of a plaintiff's prima facie case in a pregnancy discrimination case and other cases involving attributes not obvious to the employer, e.g. religion

-33-

and disability).  However, as Geraci points out, the McDonnell Douglas burden-shifting structure

does not take into account an employer's knowledge of membership in a protected class because

in most discrimination cases, plaintiff's membership would be patent (race or gender) or

documented on employee's record (age).  Id.; cf. Gomez v. Med. Coll. of Pa., 1994 WL 423847,

at *11 n.7 (E.D. Pa. 1994), aff'd, 71 F.3d 1079 (1995), cert denied, 518 U.S. 1005 (1996) (stating

that a defendant must be subjectively aware of plaintiff's race in order to intentionally

discriminate against him on this basis).  Here, Plaintiff never met Obriot or Mackey in person

and never disclosed his background or age.[21]

Although the employer's alleged lack of knowledge is not dispositive in this case, it does

to some extent rebut Plaintiff's claims of pretext and provides additional support to Defendant's

contention that it did not act with discriminatory animus.  As Plaintiff argues, both Mackey and

---

[21]Plaintiff brings this case as a "failure to hire" claim, and the parties' briefs have tended to conflate the failure to interview Plaintiff with the claim for damages based on Defendant's failure to hire Plaintiff.  The position for which Plaintiff applied was a significant managerial position with Defendant, and Defendant  at all times clearly contemplated interviewing individuals before making its hiring decisions.

Assuming arguendo Plaintiff could show discrimination by the Defendant in refusing to grant him an interview, Plaintiff would have the burden of proving the necessary link between Defendant's refusal to grant him an interview and its failure to hire him but would be entitled to a trial on this issue.  See Medcalf v. Trustees of Univ. of  Pa., 71 Fed.Appx. 924 (3d Cir. 2003) (affirming denial of defendant's post-trial motion for judgment as a matter of law after the plaintiff secured a jury award of damages in a failure to hire claim based on gender, where plaintiff was not granted an interview but was already employed by the defendant in a different position; holding that the jury was entitled to find that the plaintiff was the most qualified person for the job and should have been hired even though he was not interviewed); see also Chandoke v. Anheuser-Busch, Inc., 843 F.Supp. 16, 17 (D.N.J. 1994) (denying defendant's partial motion for summary judgment on a § 1981 claim where the plaintiff spoke with defendant's employee on the phone but was not granted an in-person interview).

The Court has found no case where a plaintiff previously unknown to the defendant and not interviewed for a managerial position was successful in a claim of discrimination.

-34-

Obriot could deduce his minimum age from his resume based on when he completed his education. In addition, Obriot spoke with Plaintiff by phone prior to Defendant's hiring decision, and Plaintiff asserts that he speaks with an accent, so Obriot could determine that Plaintiff was not American-born. But Mackey, the ultimate decisionmaker, never met or spoke to Plaintiff, so she had no opportunity to observe his accent. In addition, both Mackey and Obriot have sworn under oath that discriminatory characteristics played no role in their hiring decisions. (See Def.'s Mot. Summ. J. Exs. 6, 12 ¶ 7.) These statements, although insufficient by themselves, when taken with all of the evidence and lack of pretext, support Defendant's claim that it in no way acted in a discriminatory manner.

h.     No Evidence of Discriminatory Intent

Although Plaintiff falls into several protected classes (age, national origin, race), there is simply no evidence in the record that Defendant had an intent to discriminate against Plaintiff for any of these reasons. Plaintiff has not offered direct evidence of discrimination, nor has Plaintiff been able to rebut Defendant's legitimate, nondiscriminatory reason for not hiring him. None of Plaintiff's arguments amounts to evidence that would allow a jury to infer that Defendant's reason "was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." Fuentes, 32 F.3d at 764. Neither has Plaintiff demonstrated weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in employer's reason such that a reasonable jury would find it unworthy of credence and therefore infer Defendant's discriminatory intent. Id. at 765.

4.     Summary of Failure to Hire Claim

Plaintiff's discrimination claims must be dismissed at this stage because he has failed to

carry his burden to establish Defendant's discrimination on the basis of national origin, race, or

age.  Plaintiff has not sufficiently rebutted Defendant's legitimate reason for not interviewing

him.  Plaintiff has not cast any doubt or suspicion on Defendant's contention that his pre-

interview questionnaire responses were inadequate, which caused Defendant to no longer pursue

his candidacy.  In addition, Plaintiff has not shown that a discriminatory reason was more likely

than not a motivating or determinative cause of Defendant's failure to hire him.  Plaintiff claims

that he was treated differently than other candidates and that Defendant's reasons for not hiring

him were inconsistent, but the Record simply does not support these assertions.  Because there

are no disputed issues of material fact surrounding Plaintiff's claim and Plaintiff has not provided

evidence of discrimination, this Court will grant summary judgment for Defendant as to race,

age, and national origin discrimination under the applicable statutes and deny Plaintiff's Motion.

> **B.**     **Title VI Claim**

Although Title VI discrimination claims are tested under the same <u>McDonnell Douglas</u>

framework as Title VII claims, the Court will cite additional grounds as to why Plaintiff's Title

VI claim fails.  Title VI, Section 601states, "No person in the United States shall, on the ground

of race, color, or national origin, be excluded from participation in, be denied the benefits of, or

be subjected to discrimination under any program or activity receiving Federal financial

assistance."  42 U.S.C.A. § 2000d.  The Supreme Court has recognized a private right of action

under Section 601.  <u>Alexander v. Sandoval</u>, 532 U.S. 275, 279 (2001).  Section 604 of the statute

states that it does not apply to employment practices except where a "primary objective of the

Federal financial assistance is to provide employment."  42 U.S.C.A. §2000d-3.  Plaintiff alleges

that Defendant receives federal funding in the form of Medicare and Medicaid reimbursements.

(Pl.'s Am. Compl. ¶ 40.)

The Third Circuit has not directly addressed whether a Title VI cause of action for employment discrimination requires proof that the primary purpose of the federal funding was to provide employment.  See Chowdhury v. Reading Hosp. Med. Ctr., 677 F.2d 317, 320 n.9 (3d Cir. 1982) (noting that other circuits that have addressed this question have required proof that the primary purpose of the funding was to provide employment).  However, district courts in Pennsylvania have adopted the reasoning set forth by other circuits and have required a "logical nexus" between the federal funds received and the alleged discrimination.  Johnson v. Cmty. Coll. of Allegheny County, 566 F.Supp.2d 405, 457 (W.D. Pa. 2008); see also Burks v. City of Philadelphia, 950 F.Supp. 678, 683 (E.D. Pa. 1996) (requiring proof that the primary purpose of the federal funding was to provide employment).  In Bhatt v. Uniontown Hosp., 1986 WL 30681, at *4-6 (W.D. Pa. 1986), the court performed an extensive analysis and determined that Section 604's "primary objective" test was applicable to an employment discrimination claim brought by a doctor against a hospital that received Medicare and Medicaid funds.  The Court noted that "Medicaid and Medicare were enacted to ensure that the aged, disabled, poor and otherwise disadvantaged would be able to secure necessary medical treatment and services."  Id. at *6 (citing United States v. Baylor, 736 F.2d 1039, 1044 (5th Cir. 1984); 42 U.S.C. § 1395 (1983)).  Therefore, the court concluded that the federal aid was not intended to benefit the employment of physicians, nor did the defendant's allegedly discriminatory conduct in any way affect the primary beneficiaries of the federal aid.

Plaintiff has not addressed the validity of his Title VI claim, nor has Plaintiff advanced any evidence that the primary purpose of Defendant's Medicare and Medicaid reimbursements

were to provide employment for administrative positions like the one Plaintiff sought.  Because

Medicare and Medicaid funds do not have the primary purpose of employing home health care

administrators, this Court will follow other district judges in this circuit in denying Plaintiff's

Motion and granting Defendant's Motion on the Title VI claim for this additional reason.

**V.**     **Conclusion**

For the reasons stated above, the Court grants Defendant's Motion for Summary

Judgment and denies Plaintiff's Motion for Summary Judgment as to all claims.  An appropriate

Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ALI WARIS, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | |
| HCR MANOR CARE *dba* | : | NO. 07-3344 |
| HEARTLAND HOME HEALTH CARE, | : | |
| | : | |
| Defendant. | : | |

**<u>ORDER</u>**

AND NOW, this     10th      day of February, 2009, upon careful review of the motion

and briefings, it is hereby ORDERED as follows:

      1.      Defendant Heartland Home Health Care's Motion for Summary Judgment (Doc.

           No. 128) is GRANTED.

      2.      Plaintiff Ali Waris's Motion for Summary Judgement (Doc. No. 130) is DENIED.

      3.      All pending motions shall be DENIED as MOOT.

      4.      The clerk shall close the case.

Final judgment is entered in favor of Defendant and against Plaintiff.

BY THE COURT:

/s Michael M. Baylson

_____
Michael M. Baylson, U.S.D.J.

O:\CIVIL 07-08\07-3344 Waris, HCR v\Waris v. HCR - Cross-Mots Summ J 2-10-09.wpd